McFadden, Admrx., Appellant, et al. *v.* Equitable Life Assurance Society of the United States.

Argued Dec. 8, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused April 9, 1945.

*Nathan Lavine,* with him *Samuel Weinrott,* for appellant.

*Samuel Lippincott Borton,* with him *Herman P. Abramson,* for appellee, plaintiff in interpleader.

*Herman P. Abramson,* for Equitable Life Assurance Society.

OPINION BY MR. JUSTICE LINN, March 19, 1945:

The administratrix of C. Arthur Holton, deceased, appeals in a proceeding to determine whether the administratrix or a rival claimant named Betty Heyler, is entitled to insurance proceeds payable on a group insurance policy issued by Equitable Life Assurance Society to Sun Shipbuilding and Drydock Company, Holton's employer. Jury trial was waived. The learned court below found in favor of Betty Heyler. The question is: Was the administratrix or Betty Heyler named beneficiary?

The Society issued its group policy insuring "the lives of all eligible employees of Sun Shipbuilding and Drydock Company, . . . hereinafter called the employer, who shall have made written election as certified by the Employer to the Society, to participate in the Group Life Insurance specified . . ." The policy provided for the payment to the ". . . person or persons entitled thereto under the provisions of this policy . . ." One provision was that "The beneficiary shall be the person or persons designated on the Employer's records in accordance with the employee's election." The employee had a right to change the beneficiary ". . . by written notice to the Employer signed by the employee and such change shall become effective only upon its entry by the Employer on the insurance records maintained by it in connection with the insurance under this policy." It was agreed that "If there be no beneficiary designated by the employee or surviving . . ., payment will be made

to . . . the employee's . . . (e) executors or administrators." Among "Special Provisions" were the following: "2. Contract. This policy, and the Employer's application submitted in connection therewith, shall constitute the entire contract between the parties. . ."

"4. Certificates and Conversions. The Society will issue to the Employer for delivery to each employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled under the terms hereof, and to whom it is payable, together with a provision to the effect that in case of the termination of the employment for any reason whatsoever while insured hereunder, the employee shall be entitled to have issued to him by the Society . . . [on conditions not now involved] an individual policy of life insurance . . . [on conditions not involved] . . ."

Holton became insured under the group policy March 1, 1936; he died July 18, 1942, unmarried and without issue. His election to accept insurance appears on a document signed about February 18, 1936, entitled "Acceptance and Payroll Deduction Authority," hereafter called Acceptance card. It consisted of a form having various blanks to be filled in. Three of the blanks with the entries made in them have present importance. One required the "full name of beneficiary." In that blank, Holton wrote the name "Betty Heyler." The next line required the insertion of the "relationship to employee" to the beneficiary. On that line he wrote the word "Estate." The third line required the "Address of Beneficiary"; on that line he wrote "102 North 18th St., Phila. Pa." A boarding house or hotel was conducted at 102 North 18th Street, Philadelphia, Pa., and both he and Betty Heyler resided there. He signed that paper and delivered it to his employer.

In 1940, Holton left the employ of the shipbuilding company and thereby automatically terminated his insurance. He returned to work June 18, 1940, and re-

instated the insurance by signing a "Request For Group Insurance Reinstatement . . . with beneficiary designation thereon set forth."

The employer maintained what was called in the record, an "insurance registry card." Among other data, this card contains the name of the insured and his certificate number; it stated that the beneficiary is "The Insured's executors or administrators." It shows the insured's reinstatement on June 18, 1940, and other information that need not now be recited. Pursuant to the provision in the policy quoted above, the Society had issued a certificate which, we assume, was issued "to the Employer for delivery to" the employee, Holton, setting forth what is stated in the provision quoted from the group policy. In this certificate the beneficiary was designated to be "The Insured's Executors or Administrators." This certificate was found by the coroner after Holton's death in Holton's room at 102 North 18th Street, Philadelphia, ". . . in the top right-hand drawer of a buffet or whatever you call it in the room." The certificate is dated March 1, 1936.

The Acceptance card containing the name Betty Heyler on the line designated to receive the "full name of beneficiary" and the word "Estate" on the line designated to receive the "relationship to employee," is ambiguous and leaves uncertain what Holton meant when he elected to be insured. This uncertainty was detected before the Society's certificate dated March 1, 1936, was issued. The record contains a letter dated February 26, 1936, from an employee of the Society to its assistant division group manager in Philadelphia stating: "We note the beneficiary of C. Arthur Holton, #2547A-784 was given as 'Betty Heyler—Estate.' We assume the employee is naming his Estate as beneficiary, and have issued the certificate accordingly. If this is in accordance with the employee's wishes, please have the attached Cr. 205 form signed by the employee, and the form should be retained by the Company for their records." The record does not disclose what, if any, action was

taken pursuant to that letter but, that some act resulted, may be inferred from the fact that the insured's registry card designated the beneficiary as "the Insured's executors or administrators" and from the fact that the certificate dated March 1, 1936, also so designated the beneficiary.

The learned trial judge, reading the words of the policy that ". . . the beneficiary shall be the person or persons designated in the Employer's records in accordance with the employee's election," with the fact that Holton wrote the name Betty Heyler as beneficiary on the Acceptance card, concluded that she ". . . was literally 'the person . . . designated on the employer's records in accordance with the employee's election.' " He then proceeded with an examination of the record to see whether there was any subsequent designation of beneficiary superseding what was written on the Acceptance card, and concluded there was none and awarded the insurance to Betty Heyler. He considered the certificate and its retention by Holton as equivocal acts insufficient, without additional evidence, to destroy the inference to be made from the Acceptance card.

It is at this point in his analysis of the evidence that we are constrained to differ from the learned judge. In addition to the Acceptance card of February 18, 1936, the record contains the insured's registry card showing entries by the employer on four dates beginning with March 1, 1936, to April 5, 1941. On that card the beneficiary is stated to be the insured's executors or administrators. That registry card is as much a part of the employer's records of Holton's insurance as the acceptance card. The policy required such records be kept. The registry card was produced by an employee of the Sun Shipbuilding Company who was custodian of and had ". . . charge of the records and maintenance of the records of the group insurance plan, group hospitalization plan . . ." of the company.

The evidential effect of this card makes it impossible for us to accept the inference made by the learned court from the Acceptance card. In considering group insurance transactions, it is held that the employer acts as the agent of the employees and not of the insurer: *Bahas v. Equitable Life Assurance Society,* 128 Pa. Superior Ct. 167, 173, 193 A. 344, aff'd 331 Pa. 164, 200 A. 91; *Boseman v. Conn. Gen. Life Ins. Co.,* 301 U. S. 196, 204, 57 Sup. Ct. 686; *Duval v. Metropolitan Life Ins. Co.,* 82 N. H. 543, 136 A. 400, 404; 1 Appleman (1941) Insurance Laws & Practice, p. 38. We must therefore assume that the employer-agent was authorized by its principal, Holton, from and after March 1, 1936, the date of the registry card, to consider the beneficiary as the employee's executor or administrator, thereby superseding the effect, whatever it might otherwise have been, of the acceptance card. If the employer-agent erred in recording the employee-principal's designation, the mistake might of course be corrected by proof; the burden would be on Betty Heyler, contending that the employer's records wrongly stated the fact. Not only is there no evidence of mistake by the agent, but there is evidence to support a finding that if the designation of "executors or administrators," appearing on the registry card, had not been authorized before the employer made the record, it was ratified and adopted thereafter. This evidence is in the receipt and the retention for more than six years of the certificate issued by the Society to Holton. This certificate of March 1, 1936, shows, on its face, across the middle of the page in quite large letters, that the beneficiary is "insured's executors or administrators." The insured was a high school graduate. He retained this certificate until it was found among his effects after his death, for it provided what he should receive from the Society by way of substituted insurance on termination of his employment. It is not without significance that when his employment was terminated in 1940, he continued to retain this certificate and on his re-employment June 18, 1940, signed a paper requesting

the reinstatement of the insurance "with beneficiary designation therein set forth." Compare *Burt v. Burt,* 218 Pa. 198, 201, 67 A. 210; see Wigmore, Evidence, vol. 2, sections 245 and 260.

We also agree with the appellant that the Act of May 21, 1943, P. L. 471, 12 PS section 583, authorizing the court to allow counsel fees in specified interpleader cases, has no application to this case in which the proceeding was instituted before the effective date of the act and in which the insurance has not been paid into court.

The judgment is reversed and the record is remitted with instructions to find for the administratrix, and for such further proceedings, if any, as may be necessary to collect the amount due; costs to be paid out of the fund.